[No. B148128. Second Dist., Div. Six. Mar. 5, 2002.]

JAMES SWANSON, Plaintiff and Appellant, v.
ST. JOHN'S REGIONAL MEDICAL CENTER et al., Defendants and
Respondents.

COUNSEL

William John Weilbacher, Jr., and Robert Chatenever for Plaintiff and Appellant.

Manatt, Phelps & Phillips, Barry S. Landsberg, Harvey L. Rochman and Joanna S. McCallum for Defendants and Respondents.

OPINION

**YEGAN, Acting P. J.**—In this action for violation of the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.), James Swanson appeals from the judgment of dismissal entered after the trial court sustained, without leave to amend, the demurrer of respondents St. John's Regional Medical Center, Pleasant Valley Hospital, and Catholic Healthcare West.

The trial court ruled that hospital liens filed pursuant to the Hospital Lien Act (Civ. Code, § 3045.1 et seq.) fall within the safe harbor provision of the UCL and are not an unfair business practice. We affirm. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 182-184 [83 Cal.Rptr.2d 548, 973 P.2d 527].)

*Safe Harbor Immunity*

Appellant has filed this action on behalf of California residents alleging: "Defendants provide medical treatments to PATIENTS with medical insurance who are injured through the acts of third parties. When those PATIENTS subsequently recover damages from the third party tortfeasors, Defendants, as a practice, unlawfully, unfairly, and fraudulently assert an interest in the tort recovery pursuant to California Civil Code sec. 3045.1." The complaint alleges that respondents' hospital liens constitute an unfair business practice and are based on a "double billing" calculation in which "[t]he amount of the lien pursued by Defendants is greater than what the liability of the PATIENT would have been for the medical services . . . under the terms of the contracts between the PATIENTS' medical insurance carriers and the Defendants."

The Hospital Lien Act (HLA) (Civ. Code, § 3045.1 et seq.) provides that hospitals may assert a lien on recoveries from a third party tortfeasor for the reasonable value of services provided to the patient.[1] In *Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies* (1997) 15 Cal.4th 213, 215-216 [61 Cal.Rptr.2d 638, 932 P.2d 210], our California Supreme Court described the essential features of the HLA: "[W]hen a hospital provides care for a patient, the hospital has a statutory lien against any judgment, compromise, or settlement received by the patient from a third person responsible for his or her injuries, or the third person's insurer, if the hospital has notified the third person or insurer of the lien. (Civ. Code,

---

[1] All statutory references are to the Civil Code unless otherwise stated. Section 3045.1 states: "Every person, partnership, association, corporation, public entity, or other institution or body maintaining a hospital licensed under the laws of this state which furnishes emergency and ongoing medical or other services to any person injured by reason of an accident or negligent or other wrongful act not covered by Division 4 (commencing with Section 3201) or Division 4.5 (commencing with Section 6100) of the Labor Code, shall, if the person has a claim against another for damages on account of his or her injuries, have a lien upon the damages recovered, or to be recovered by the person, or by his or her heirs or personal representative in case of his or her death to the extent of the amount of the reasonable and necessary charges of the hospital and any hospital affiliated health facility, as defined in Section 1250 of the Health and Safety Code, in which services are provided for the treatment, care, and maintenance of the person in the hospital or health facility affiliated with the hospital resulting from that accident or negligent or other wrongful act."

§§ 3045.1, 3045.2, 3045.3.) If the hospital is paid at the time the judgment, compromise, or settlement is disbursed, it is entitled to receive as much of its lien as can be satisfied out of 50 percent of the recovery. (§§ 3045.2, 3045.4.)" (Fn. omitted.)

■ Appellant contends that it is an unlawful business practice to file hospital liens on third party tortfeasor recoveries where the patient's medical insurance carrier has paid the hospital an agreed-upon discounted amount for the medical services. It is settled that a business practice does not violate the UCL if it is permitted by law. (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1505 [82 Cal.Rptr.2d 368]; *Shvarts v. Budget Group, Inc.* (2000) 81 Cal.App.4th 1153, 1157-1158 [97 Cal.Rptr.2d 722].) In *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th 163, 182, our Supreme Court held: "Specific legislation may limit the judiciary's power to declare conduct unfair. . . . When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor."

The HLA authorizes the very business practice that appellant claims is unlawful.[2] It does not distinguish between insured and uninsured patients. Hospitals may assert liens "to the extent of the amount of the reasonable and necessary charges of the hospital . . . for the treatment, care, and maintenance" of a patient injured by a tortfeasor. (§ 3045.1.) In construing a statute, "the office of the Judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted . . . ." (Code Civ. Proc., § 1858; *Lazar v. Hertz Corp., supra,* 69 Cal.App.4th 1494, 1503.) Because hospital liens are authorized by the HLA, appellant has no claim under the UCL. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th at pp. 182-184.)

---

[2] In *Nishihama v. City and County of San Francisco* (2001) 93 Cal.App.4th 298, 307 [112 Cal.Rptr.2d 861], the Court of Appeal found that a hospital lien in a personal injury action against the City and County of San Francisco (City) did "not extend beyond the amount [the hospital] agreed to receive from Blue Cross as payment in full for services provided to plaintiff." The court agreed that its ruling, with respect to the hospital, was dicta because the hospital "is not a party to this action" and "is not bound to any ruling made concerning its lien rights." (*Id.,* at p. 309.) The issue apparently arose in a posttrial motion by City to reduce the judgment by the amount of the collateral source payment from Blue Cross. (See Gov. Code, § 985, subd. (b); 1 Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th ed. 2001) § 8:59, pp. 396-397.) The Court of Appeal concluded that plaintiff could not use the hospital lien to inflate the award for medical costs. The court explained: "The HLA places the burden of satisfying the hospital's lien on the defendant tortfeasor, not on the plaintiff. . . . Civil Code sections 3045.4 and 3045.5 permit the hospital to seek recourse against the tortfeasor, but there is no authority permitting the hospital to seek recourse from the plaintiff." (*Nishihama, supra,* at p. 309.)

## Litigation Privilege

The complaint is also barred by section 47, subdivision (b)(2), which provides an absolute privilege for communications made in a judicial or quasi-judicial proceeding. (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1194 [17 Cal.Rptr.2d 828, 847 P.2d 1044].) Lien notices authorized by law are protected by the litigation privilege. (E.g., *Frank Pisano & Associates v. Taggart* (1972) 29 Cal.App.3d 1, 25 [105 Cal.Rptr. 414] [mechanic's lien]; *Wilton v. Mountain Wood Homeowners Assn.* (1993) 18 Cal.App.4th 565, 569 [22 Cal.Rptr.2d 471] [homeowners association assessment lien].) Appellant may not plead around the privilege " 'by relabeling the nature of the action as one brought under the unfair competition statute.' [Citation.]" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, *supra*, 20 Cal.4th at p. 182.)

## Balance Billing

Appellant argues that the hospital liens are based on the unlawful practice of "balance billing."[3] Hospitals make it a business practice to assert liens on third party tortfeasor recoveries even though the patient's medical insurance carrier has agreed to pay the hospital bill for a discounted amount. The "balance" billed is the difference between the reasonable value of the hospital services and the negotiated amount paid by the patient's medical insurance carrier.

Appellant claims that the medical insurance payment extinguishes the patient's "debt" to the hospital. Without an underlying debt, there is no common law right to assert a lien. (§§ 2872, 2874.) The HLA, however, is a statutory lien and does not require that the patient owe the hospital a debt. (*Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies*, *supra*, 15 Cal.4th at pp. 222-223; e.g., *Andrews v. Samaritan Health System*

---

[3]Appellant's reliance on *Nishihama v. City and County of San Francisco*, *supra*, 93 Cal.App.4th 298 is misplaced. The Court of Appeal did not hold that balancing billing is an unfair business practice. Nor does the filing of a hospital lien necessarily result in a double payment to the hospital. Under the HLA, the amount of the lien is determined by the trial court. It could be zero, or, in cases where the patient's medical insurance carrier is insolvent, the full value of the medical services provided. The HLA works hand in hand with the Knox-Keene Health Care Service Plan Act of 1975 (Health & Saf. Code, § 1340 et seq.), which requires that hospitals bear the financial risk if the patient's medical insurance carrier becomes insolvent. Hospitals have no recourse against the patient for services covered by the patient's medical insurance. (Health & Saf. Code, § 1379, subd. (a); e.g., *In re Family Health Services, Inc.* (Bankr. C.D.Cal. 1989) 105 B.R. 937 [preliminary injunction enjoining medical service providers from bringing collection actions against Maxicare members following Maxicare's insolvency].)

(2001) 201 Ariz. 379 [36 P.3d 57, 61-62] [Arizona hospitals may assert statutory liens (Ariz. Rev. Stat. § 33-931) for balance of customary charges not paid by patient's health insurer].) A statutory lien does not require that the recipient of the service owe a debt for the service from which the lien arises. (E.g., Lab. Code, § 3852 [workers' compensation lien on injured employee's recovery from tortfeasor]; Lab. Code, § 4417 [asbestos workers' account liens]; Health & Saf. Code, § 121270, subd. (k) [AIDS Vaccine Victims Compensation Fund liens]; *Kain v. State Dept. of Health Services* (2001) 91 Cal.App.4th 325 [109 Cal.Rptr.2d 891] [award under National Vaccine Injury Compensation Program subject to Welf. & Inst. Code, § 14124.71 for a Medi-Cal lien].)

Enacted in 1961, the HLA originally provided that hospitals could assert liens for the reasonable value of emergency services to patients injured by third parties. "The apparent purpose of former section 3045.4 was to secure part of the patient's recovery from liable third persons to pay his or her hospital bill, while ensuring that the patient retained sufficient funds to address other losses resulting from the tortious injury." (*Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies, supra,* 15 Cal.4th at p. 217.)

In 1992, the Legislature amended the HLA to encompass all hospital services provided a patient injured by reason of a third party's "negligent or other wrongful act." (Stats. 1992, ch. 302, § 1, p. 1223; 4 Witkin, Summary of Cal. Law (2001 supp.) Personal Property, § 191, p. 93.) The HLA lien is not a charge against the patient. To the contrary, it is a "statutory medical lien in favor of a hospital against third persons liable for the patient's injuries." (*Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies, supra,* 15 Cal.4th at p. 217.)

Under the HLA, the hospital seeks recourse against the third party tortfeasor that caused the patient's injuries. (§§ 3045.4, 3045.5; cf. *Andrews v. Samaritan Health System, supra,* 36 P.3d at p. 62 [under Arizona statute (Ariz. Rev. Stat. § 20-1072), hospital lien is not a billing or collection action].) The out of state cases cited by appellant are inapposite and involve hospital liens assessed directly against the patient or liens that violated federal law. (*Wright v. First National Bank In Albuquerque* (1997) 123 N.M. 417 [941 P.2d 498, 500] [hospital lien on funds belonging to patient]; *Dorr v. Sacred Heart Hospital* (1999) 228 Wis.2d 425 [597 N.W.2d 462, 470] [hospital lien against patient]; *Holle v. Moline Public Hosp.* (C.D.Ill. 1984) 598 F.Supp. 1017, 1021 [hospital lien violated federal Medicare law, 42 U.S.C. § 1395cc(a)(1)(A)]; *Satsky v. U.S.* (S.D.Tex. 1998) 993 F.Supp. 1027,

1029-1030 [lien invalid where debt extinguished because of federal Medi-. care limit on hospital charges].)

Appellant complains that HLA liens are an unfair business practice whenever the lien amount exceeds the negotiated amount paid by the patient's medical insurance carrier. The argument is without merit. The Legislature has exempted hospital liens from balance billing limits. On September 28, 2000, it enacted section 3040 to impose balance billing limits on health maintenance organizations (HMO's) that pay reduced, negotiated rates for patient treatment and assert liens on third party tortfeasor recoveries for the full amount of the hospital charges. (Stats. 2000, ch. 848, § 1.) Section 3040 provides that the HMO lien may not exceed the reasonable cost actually paid to perfect the lien. Hospital liens, however, are not subject to the lien limitation. (§ 3040, subd. (g)(3).)[4] The legislative history to section 3040 states that "this bill does not intend to limit hospital liens now available under Civil Code section 3045.1. Under that section, a hospital may assert a lien upon damages recovered by an injured person from a third party tortfeasor to the extent of the amount of the reasonable and necessary charges of the hospital and any hospital affiliated health facility for medical services provided to the injured person as a result of the third party's wrongful acts. This bill does not seek to affect a hospital's ability to assert such a lien." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 1471 (1999-2000 Reg. Sess.) as amended June 15, 2000.)

Under the doctrine of stare decisis, we are bound by the holding in *Mercy Hospital & Medical Center v. Farmers Ins. Group of Companies, supra,* 15 Cal.4th 213. Because the Legislature has determined that hospital liens are exempt from balancing billing limits, we may not override that determination.[5] The trial court correctly found that sections 3045.1 and 3040, subdivision (g)(3) provide a safe harbor against the UCL claim. (E.g., *Samura v.*

[4]Section 3040, subdivision (g) states: "This section is not applicable to any of the following: [¶] . . . [¶] (3) A lien for hospital services pursuant to Chapter 4 (commencing with Section 3045.1.)."

[5]In *Grauberger v. St. Francis Hosp.* (N.D.Cal. 2001) 149 F.Supp.2d 1186, a federal district court ruled that the HLA did not authorize balance billing. There, the hospital contract with the patient's HMO, Blue Shield, provided: " 'Hospital shall be entitled to bill the subscriber *or other responsible party* directly on the basis of customary charges for services rendered *which are not covered under the applicable subscriber agreement.*' . . . Since it is undisputed that the services rendered by the Hospital in this case were covered by the Agreement, this language suggests that the Hospital is *not* entitled to bill tortfeasor (the 'other responsible party') on the basis of its customary charges." (*Id.,* at p. 1192.)

Unlike *Grauberger,* appellant's complaint does not allege that the contracts between respondents and the patients' medical insurance companies prohibit hospital liens. Appellant, in his opening brief, concedes that "some contracts between hospitals and medical insurance

*Kaiser Foundation Health Plan, Inc.* (1993) 17 Cal.App.4th 1284, 1301-1302 [22 Cal.Rptr.2d 20] [regulatory control of HMO's third party liability provision not subject to UCL]; *Congress of California Seniors v. Catholic Healthcare West* (2001) 87 Cal.App.4th 491, 510-511 [104 Cal.Rptr.2d 655] [court may not regulate hospital Medicare cost reports under guise of UCL].) "[C]ourts may not use the unfair competition law to condemn actions the Legislature permits." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th at p. 184.)

The judgment is affirmed with costs to respondents.

Coffee, J., and Perren, J., concurred.

Appellant's petition for review by the Suprme Court was denied June 26, 2002.

---

carriers may give the hospital the right to file liens against recoveries from third party tortfeasors. There is nothing wrong with this . . . ."

To the extent that *Grauberger* stands for the proposition that a hospital does not have a lien for the "balance billing" complained of in the instant case, we decline to follow it. (E.g., *People v. Bradley* (1969) 1 Cal.3d 80, 86 [81 Cal.Rptr. 457, 460 P.2d 129] [federal decisions not controlling on matters of state law]; 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 943, p. 984.) Moreover, the federal district court, in a November 6, 2001 order, vacated its previous grant of partial summary judgment. (*Grauberger v. St. Francis Hospital* (N.D.Cal. 2001) 169 F.Supp.2d 1172, 1180.)